**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ERIK CROWL, KEITH WADE, ERIC
O'REILLY, ALTON PARKER, STEVEN
HEY, NATHAN COHEN, SAMUEL
GLICK, FARSHID SEPASSI, ROBERT
NEELY, ANTHONY WATSON, TYLER
HANDLEY, QWNTM CAPITAL
LIMITED LIABILITY LIMITED
PARTNERSHIP, DAVID WARD, ANDRE
PAEZ, and SALEM ALOBAID

     *Plaintiffs*,

vs.

STRONGBLOCK, *et al*.,

     *Defendants*.

_____

**Case No. 1:22-cv-7313-VSB**

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
AND COMPEL ARBITRATION**

Dated: October 14, 2022

Respectfully submitted,

LATHROP GPM LLP

/s/ *Nancy Sher Cohen*
Nancy Sher Cohen (NY Bar No. 4160479)
2049 Century Park East, Suite 3500S
Los Angeles, California 90067
(310) 789-4600 / (310) 789-4601 FAX
Nancy.Cohen@LathropGPM.com

and

Michael J. Abrams (*pro hac vice forthcoming*)
Kate O'Hara Gasper (*pro hac vice forthcoming*)
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
(816) 292-2000 / (816) 292-2001 FAX
Michael.Abrams@LathropGPM.com
Kate.Gasper@LathropGPM.com

ATTORNEYS FOR DEFENDANTS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 2

I.  StrongBlock and the Sign-Up for Nodes-as-a-Service ............................................... 2

II.  StrongBlock's Terms of Service and the Arbitration Agreements ........................... 5

LEGAL ARGUMENT ............................................................................................................ 10

   A.  Legal Standards to Dismiss and Compel Arbitration ...................................... 10

     1.  StrongBlock and Plaintiffs Entered into a Valid and Enforceable Arbitration
Agreement. ............................................................................................................ 12

     2.  Plaintiffs' Claims Against StrongBlock are Within the Scope of the Arbitration
Agreement. ............................................................................................................ 17

     3.  Plaintiffs' Claims Against the Individual Defendants are Within the Scope of the
Arbitration Agreement ....................................................................................... 19

     4.  Defendants Seek a Dismissal of Plaintiffs' Action and, in the Alternative,
Request a Stay Pending Arbitration. ................................................................. 21

CONCLUSION ...................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applebaum v. Lyft, Inc.*,
    263 F. Supp. 3d 454 (S.D.N.Y. 2017)...............................................................................12, 17

*Begonja v. Vornado Realty Trust*,
    159 F. Supp.3d 402 (S.D.N.Y. 2016)......................................................................................11

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
    534 F. Supp. 3d 326 (S.D.N.Y. 2021).......................................................................................2

*Citigroup, Inc. v. Abu Dhabi Investment Authority*,
    776 F.3d 126 (2d Cir. 2015)...................................................................................................11

*Cornelius v. Wells Fargo Bank, N.A.*,
    No. 19-CV-11043 (LJL), 2020 WL 1809324 (S.D.N.Y. Apr. 8, 2020) .................................10

*Crawford v. Beachbody, LLC*,
    No. 14CV1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ............................17

*Daly v. Citigroup Inc.*,
    No. 16-cv-9183 (RJS), 2018 WL 741414 (S.D.N.Y. Feb. 6, 2018) ......................................11

*Epic Sys. Corp. v. Lewis*,
    138 S.Ct. 1612 (2018)............................................................................................................11

*Feld v. Postmates, Inc.*,
    442 F. Supp. 3d 825 (S.D.N.Y. 2020).....................................................................................16

*Flores v. Chime Fin., Inc.*,
    No. 21-CV-4735 (RA), 2022 WL 873252 (S.D.N.Y. Mar. 23, 2022)...................................16

*Fteja v. Facebook*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012).....................................................................................16

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015)...................................................................................................21

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011).................................................................................................................11

*Latif v. Morgan Stanley & Co. LLC*,
    No. 18CV11528 (DLC), 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ...............................12

ii

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
    858 F.2d 825 (2d Cir. 1988)......................................................................................18

*Meridian Autonomous Inc. v. Coast Autonomous LLC*,
    No. 17-CV-5846 (VSB), 2020 WL 496078 (S.D.N.Y. Jan. 30, 2020)....................................20

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)....................................................................... *passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)................................................................................................11

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010)........................................3

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
    *369 F.3d 645 (2d Cir. 2004)* ...........................................................................18, 19

*Rost v. Liberty Coca-Cola Beverages, LLC*,
    No. 20 CV 10559 (VB), 2021 WL 3723092 (S.D.N.Y. Aug. 23, 2021) ................................21

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)...................................................................................14

*Starke v. Gilt Groupe, Inc.*,
    No. 13-CV-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ............................................16

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................................................................17

*Thorne v. Square, Inc.*,
    No. 20CV5119NGGTAM, 2022 WL 542383 (E.D.N.Y. Feb. 23, 2022),
    appeal withdrawn, No. 22-542, 2022 WL 2068771 (2d Cir. Apr. 14, 2022).........................16

*Vera v. Saks & Co*,
    335 F.3d 109 (2d Cir. 2003)...................................................................................18

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997)....................................................................................17

**Statutes**

9 U.S.C. § 2.......................................................................................................10

Federal Arbitration Act ............................................................................2, 10, 11, 21

## PRELIMINARY STATEMENT

Defendant Jenison Holdings SEZC, improperly named in this action by its registered tradename "Strongblock,"[1] and individual Defendants David Moss, Brian Abramson, Corey Lederer, and Konstantin Shkut (collectively "Defendants") respectfully ask the Court to dismiss this action, in its entirety, and compel arbitration. This Court does not have jurisdiction over this dispute because Plaintiffs' claims are covered by a valid and binding arbitration agreement that they assented to when they signed up for StrongBlock's services. Plaintiffs filed this action against Defendants on August 26, 2022, alleging violations of the Securities Act, and common law claims for breach of contract, conversion, misrepresentation, fraudulent inducement, negligence and unjust enrichment. The crux of Plaintiffs' Complaint is that StrongBlock's tokens and nodes are purportedly unregistered securities, and that Defendants improperly capped the rewards issued for StrongBlock's nodes. For a variety of reasons, Plaintiffs' claims lack any merit. But as an initial matter, Plaintiffs' attempt to bring these claims before this Court directly violates the arbitration agreement they entered into when Plaintiffs accepted the StrongBlock Terms of Service.

Plaintiffs allege that they "purchas[ed] Strongblock . . . nodes from Defendants." Complaint, ¶¶ 15-29. This allegation renders their claims improperly before this Court because at all relevant times the StrongBlock Terms of Service ("TOS") included a broad arbitration

---

[1] Plaintiffs, without any factual support, make the conclusory statement that "Strongblock is an unincorporated general partnership operating within the United States of which the individual Defendants are partners." Complaint, at ¶ 1. However, as disclosed on StrongBlock's website and Terms of Service, StrongBlock is an official tradename, registered with the United States Patent and Trademark Office, of Jenison Holdings SEZC, a Special Economic Zone Company located in the Cayman Islands. *See* Declaration of David Moss, **Exhibit A**, at ¶ 4; *see also* Exhibit A-2 (Terms of Service).

agreement.  During the StrongBlock sign-up process, Plaintiffs were presented with a sign-up flow that clearly notified them of the contractual nature of the Terms of Service and allowed them the opportunity to review the terms before manifesting their consent.  *See* Moss Declaration, at ¶ 21.  The Second Circuit has found similar sign-up flows binding and enforceable, and the Supreme Court has long recognized the liberal policy in favor of enforcing arbitration agreements, as evidenced by the Federal Arbitration Act ("FAA").  Plaintiffs should be compelled to submit their claims to individual arbitration and this action should be dismissed.

## **FACTUAL BACKGROUND**

### I.   **StrongBlock and the Sign-Up for Nodes-as-a-Service**

StrongBlock's business model is to provide Nodes-as-a-Service (NaaS).  Moss Declaration, at ¶ 6.  In general, a blockchain node participates in a blockchain network.  *Id.* at ¶ 7.  A node runs the blockchain protocol's software, which allows the node to submit transactions on the blockchain and keep the network secure.  *Id.*  Nodes historically did not receive any financial incentive for performing the node's function.  *Id*.  StrongBlock sought to change this drawback by incentivizing individuals to support nodes, which StrongBlock would provision, operate and maintain.  *Id.* at ¶ 8.

StrongBlock started offering NaaS on December 3, 2020.  *Id.* at ¶ 9.  All StrongBlock nodes, infrastructure and applications are provisioned and exist on servers in Singapore; the nodes are owned, operated and maintained by StrongBlock.  *Id.* at ¶ 10.  NaaS works similarly to a typical subscription service; meaning, users pay fees in exchange for certain benefits.  *Id.*  at ¶ 11.  Specifically, StrongBlock users contribute 10 non-refundable STRONG (now STRNGR) tokens[2]

---

[2]STRONG and STRNGR are utility tokens, which "allow the holder to use or access a certain product or service," namely, sign up for StrongBlock's NaaS.  *See In re Bibox Grp.*

and an initial maintenance fee to sign up for StrongBlock's NaaS, and are then eligible to receive tokens as a reward. *Id.* at ¶ 12. Node rewards were initially paid in STRONG tokens. *Id.* at ¶ 13. In April 2022, StrongBlock began paying rewards in STRNGR tokens. *Id.* at ¶ 14.

StrongBlock users can sign up for NaaS only if the user affirmatively checks the digital sign-up flow agreeing to StrongBlock's Terms of Service. *Id.* at ¶ 22. An example of the NaaS sign-up flow, from January 1, 2021, is shown below:

---

*Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 330 (S.D.N.Y. 2021) (comparing utility tokens to security tokens). Moreover, these utility tokens are neither sold on a United States-based exchange, nor are they exchanged as part of a "domestic transaction," as required for application of Securities Act. *See Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) (§ 10(b) of the Securities Exchange Act applies only to transactions in securities listed on domestic exchanges and domestic transactions in other securities).

All STRONG and STRNGR tokens were created on servers located in Singapore by individuals located in Germany and the Cayman Islands, and issued by an entity related to StrongBlock. *See* Moss Declaration, at ¶ 15. There was no Initial Coin Offering of the STRONG or STRNGR tokens. *Id.* at ¶ 16. As a part of the NaaS offering, StrongBlock has never sold tokens on its website or sold them to StrongBlock users. *Id.* at ¶ 17. Crypto wallet holders may buy and sell the tokens from other token holders on crypto exchanges, but none of the revenue from these token trades has been passed along to StrongBlock or any of its associated entities. *Id.* at ¶ 18. The StrongBlock *nodes*, as opposed to the STRONG and STRNGR *tokens*, are not bought or sold on any type of exchange; StrongBlock maintains control and possession of the nodes, and the nodes physically remain in Singapore. StrongBlock users—including Plaintiffs—have no control or possession of the nodes at any time. *Id.* at ¶ 20.

Counts I and II of Plaintiffs' Complaint, the two claims alleging violations of the Securities Act, are subject to dismissal for failure to state a claim upon which relief can be granted. Defendants will seek such dismissal if Plaintiffs individually continue to pursue their Securities Act claims in arbitration.



*Id.* at ¶ 23.  The above graphic is a screenshot of the StrongBlock user experience on or around January 1, 2021.[3]  *Id.* at ¶ 24.  However, from December 2020 through present, the phrase "I also agree to the . . .  Terms of Service" has always appeared, along with a hyperlink to the referenced Terms of Service.  *Id.* at ¶ 25.  Without checking the box, a StrongBlock user cannot sign up for NaaS.  *Id.* at ¶ 26.

---

[3] Notably, even from the beginning of the StrongBlock NaaS rollout, StrongBlock advised its users that "Rewards calculations are based on many factors, including the number of nodes, node health, node revenue, token price, and NFT ownership."  *See* Moss Declaration, at ¶ 29.  Users were advised that rewards "are variable," and are "not guaranteed."  *Id.* at ¶ 30.  The plain text of this sign-up flow belies the very essence of Plaintiffs' claims that StrongBlock supposedly promised them infinite rewards.  StrongBlock will raise this issue, among many others, to the arbitrator should Plaintiffs individually pursue their claims in the correct forum.

The current StrongBlock Terms of Service pertaining to dispute resolution have been published on the StrongBlock website continuously since January 16, 2021 with no changes. *Id.* at ¶ 33. A previous version of the Terms of Service, which included a similarly broad arbitration provision, was in place before December 3, 2020, when StrongBlock launched the NaaS platform. *Id.* at ¶ 34. All individuals or entities who claim to have "purchased"[4] StrongBlock nodes have agreed to accept StrongBlock's Terms of Service, which have always included a broad provision for individual binding arbitration. *Id.* at ¶ 35.

## II.   **StrongBlock's Terms of Service and the Arbitration Agreements**

Those who signed up for StrongBlock's NaaS during the first six weeks of the rollout, between December 3, 2020 and January 16, 2021, agreed to the following terms for dispute resolution:

15. Dispute Resolution

We will use our best efforts to resolve any potential disputes through informal, good faith negotiations. If a potential dispute arises, you must contact us by sending an email … so that we can attempt to resolve it without resorting to formal dispute resolution. If we aren't able to reach an informal resolution within sixty days of your email, then you and we both agree to resolve the potential dispute according to the process set forth below. Any claim or controversy arising out of or relating to the App, this Agreement, or any other acts or omissions for which you may contend that we are liable, including (but not limited to) any claim or controversy as to arbitrability ("Dispute"), shall be finally and exclusively settled by arbitration under the JAMS Optional Expedited Arbitration Procedures. You understand that you are required to resolve all Disputes by binding arbitration. The arbitration shall be held on a confidential basis before a single arbitrator, who shall be selected pursuant to JAMS rules. The arbitration will be held in San Francisco, California,

---

[4] The Complaint alleges that Plaintiffs "purchased" StrongBlock nodes. *See* Doc. 1, at ¶¶ 15-29. However, as previously explained, the NaaS business model operates similarly to a subscription service. *See* Moss Declaration, at ¶ 11. By signing up for NaaS, or "creating" a StrongBlock node, a StrongBlock user pays a fee for StrongBlock's node service in exchange for receiving rewards. *Id.* at ¶ 31. The StrongBlock user does not purchase, own, control or take possession of a node. *Id.* at ¶ 32.

unless you and we both agree to hold it elsewhere. Unless we agree otherwise, the arbitrator may not consolidate your claims with those of any other party. Any judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.

(hereafter referred to as the "**December 3, 2020 Arbitration Agreement**").  *See* Moss Declaration, at ¶ 36; *also* Exhibit A-1 (complete copy of the December 3, 2020 StrongBlock Terms of Service).  The December 3, 2020 Arbitration Agreement contains a choice of law provision for California law.  *Id.* at ¶ 38.

Those who signed up for StrongBlock's NaaS from January 16, 2021, through the present, agreed to the following terms for dispute resolution:

PLEASE READ THESE TERMS CAREFULLY, AS THEY CONTAIN AN AGREEMENT TO ARBITRATE AND OTHER IMPORTANT INFORMATION REGARDING YOUR LEGAL RIGHTS, REMEDIES, AND OBLIGATIONS.

*       *       *

DISPUTE RESOLUTION - AGREEMENT TO ARBITRATE

Dispute Resolution by Binding Arbitration; Jury Trial Waiver; Class Action Waiver.

PLEASE READ THIS SECTION CAREFULLY AS IT AFFECTS YOUR RIGHTS.

INFORMAL DISPUTE RESOLUTION: Most user concerns can be resolved by use of our "Support" feature available on all applications pages. If StrongBlock is unable to resolve your concerns and a dispute remains between you and StrongBlock, this Section explains how the parties have agreed to, and shall, resolve it.

You and StrongBlock agree to make reasonable, good faith efforts to informally resolve any dispute before you initiate formal dispute resolution. You agree to send StrongBlock a written notice that describes the nature and basis of the claim or dispute and sets forth the relief sought. Written notice to StrongBlock must be sent via postal mail to Strathvale House, 90 North Church Street, George Town, Grand Cayman, KY1-1106, Cayman Islands ("Notice Address").

FORMAL DISPUTE RESOLUTION: If StrongBlock and you do not resolve the claim within sixty (60) calendar days after the Notice is received, then your options for formal dispute resolution depend upon your country of residence. This Section does not prevent you from bringing your dispute to the attention of any federal,

state, or local government agencies that can, if the law allows, seek relief from us for you.

FOR RESIDENTS OF THE UNITED STATES & OTHER JURISDICTIONS THAT ENFORCE BINDING ARBITRATION: YOU AND StrongBlock AGREE THAT ANY DISPUTE, CLAIM, OR CONTROVERSY BETWEEN YOU AND StrongBlock ARISING IN CONNECTION WITH OR RELATING IN ANY WAY TO THESE TERMS OR TO YOUR RELATIONSHIP WITH StrongBlock AS A USER OF THE SERVICE (WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, AND WHETHER THE CLAIMS ARISE DURING OR AFTER THE TERMINATION OF THE SERVICE) WILL BE DETERMINED BY MANDATORY BINDING INDIVIDUAL (NOT CLASS, REPRESENTATIVE, OR ACTION) ARBITRATION. YOU AND StrongBlock FURTHER AGREE THAT THE ARBITRATOR SHALL HAVE THE EXCLUSIVE POWER TO RULE ON HIS OR HER OWN JURISDICTION, INCLUDING ANY OBJECTIONS WITH RESPECT TO THE EXISTENCE, SCOPE OR VALIDITY OF THE ARBITRATION AGREEMENT OR TO THE ARBITRABILITY OF ANY CLAIM OR COUNTERCLAIM.

Arbitration is a proceeding before a neutral arbitrator, instead of before a judge or jury. Arbitration is less formal than a lawsuit in court, and provides more limited discovery. It follows different rules than court proceedings, and is subject to very limited review by courts. The arbitrator will issue a written decision and provide a statement of reasons if requested by either party. YOU UNDERSTAND THAT YOU ARE GIVING UP THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BEFORE A JUDGE OR JURY.

YOU AND StrongBlock AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER (OR IN A REPRESENTATIVE OR ACTION) IN ANY PURPORTED CLASS OR, REPRESENTATIVE, OR ACTION. Unless both you and StrongBlock agree, no arbitrator or judge may allow more than one person's claims or otherwise preside over any form of a representative or class proceeding, and the arbitrator specifically does not have the power to alter this. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. If a court decides that applicable law precludes enforcement of any of this Section's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court.

Either you or we may start arbitration proceedings. Any arbitration between you and StrongBlock will be administered at the International Chamber of Commerce ("ICC") International Court of Arbitration under the Rules of Arbitration of the ICC then in force (the "ICC Rules"), as modified by this Arbitration Agreement, or, if ICC no longer exists or is unable to participate, such other arbitration forum

selected by StrongBlock. The language to be used in the arbitral proceeding shall be English. For more information on the ICC, the Rules and Procedures, or the process for filing an arbitration claim, you may call the ICC in Paris, France at +33 (0) 1 49 53 28 28 or visit the ICC website at https://iccwbo.org.

Unless StrongBlock expressly agrees in writing to the contrary, the parties shall keep confidential all awards and orders in any arbitration pursuant to this section, as well as all materials in the arbitral proceedings created for the purpose of the arbitration and all other documents produced by another party in the arbitral proceedings not otherwise in the public domain; provided that the foregoing shall not prevent either party from making any disclosure of such to the extent that disclosure is required of a Party by a legal duty, to protect or to pursue a legal right, or to enforce or challenge an award in legal proceedings before the appropriate court or other judicial authority. You and StrongBlock agree that the US Federal Arbitration Act applies and governs the interpretation and enforcement of this provision, to the extent applicable.

Absent a contrary decision of the arbitrator or otherwise required by applicable law, the parties agree that the seat and venue of the arbitration is the Cayman Islands. The language of the arbitration will be English. The arbitration will be conducted before one commercial arbitrator from the International Chamber of Commerce ("ICC") with substantial experience in resolving commercial contract disputes. As modified by these Terms, and unless otherwise agreed upon by the parties in writing, the arbitration will be governed by the ICC's Arbitration Rules including its Expedited Procedure Provisions (collectively, the "Rules and Procedures"). The ICC Emergency Arbitrator Provisions shall not apply.

The dispute will be resolved by the submission of documents without a hearing, unless a hearing is requested by a party or deemed to be necessary by the arbitrator, in which case, a party may elect to participate telephonically. The arbitrator shall make a decision in writing, and shall provide a statement of reasons if requested by either party. The arbitrator must follow applicable law, and any award may be challenged if the arbitrator fails to do so. You and StrongBlock may litigate in court to compel arbitration, to stay proceeding pending arbitration, or to confirm, modify, vacate or enter judgment on the award entered by the arbitrator.

Nothing in this Section removes or limits StrongBlock's liability for fraud, fraudulent misrepresentation, death or personal injury caused by its negligence, and, if required by applicable law, gross negligence. Additionally, notwithstanding this agreement to arbitrate, claims for infringement or misappropriation of the other party's patent, copyright, trademark, trade secret or other intellectual property rights shall not be subject to arbitration under this Section.

You or StrongBlock may seek emergency equitable relief before a court located in the Cayman Islands in order to maintain the status quo pending arbitration and you agree to submit to the exclusive personal jurisdiction of the courts located within

the Cayman Islands for such purpose. A request for interim measures shall not be deemed to be a waiver of the right to arbitrate.

FOR RESIDENTS OF THE EUROPEAN UNION & OTHER JURISDICTIONS THAT DO NOT ENFORCE THE BINDING ARBITRATION ABOVE: Any non-arbitrable disputes arising under or in connection with these Terms shall be subject to the exclusive jurisdiction of the courts of the Cayman Islands.

This Section will survive termination of your account and these Terms as well as any voluntary payment of any debt in full by you or any bankruptcy by you or StrongBlock. With the exception of any provision of this Section prohibiting arbitration on a class or collective basis, if any part of this arbitration provision is deemed to be invalid, unenforceable, or illegal, or otherwise conflicts with the Rules and Procedures, then the balance of this arbitration provision will remain in effect and will be construed in accordance with its terms as if the invalid, unenforceable, illegal or conflicting part was not contained herein. If, however, any provision of this Section prohibiting arbitration on a class or collective basis is found to be invalid, unenforceable, or illegal, then the entirety of this arbitration provision will be null and void, and neither you nor StrongBlock will be entitled to arbitration.

YOU AGREE THAT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM OR CAUSE OF ACTION ARISING OUT OF OR RELATING TO THE SERVICE OR THESE TERMS MUST BE FILED WITHIN ONE (1) YEAR AFTER SUCH CLAIM OR CAUSE OF ACTION AROSE OR IT WILL BE FOREVER BARRED.

(hereafter referred to as the "**January 16, 2021 Arbitration Agreement**"). *Id.* at ¶ 39; *see also* Exhibit A-2 (complete copy of the January 16, 2021 StrongBlock Terms of Service). The January 16, 2021 Arbitration Agreement contains a choice of law provision for the Cayman Islands. *Id.* at ¶ 42. The December 3, 2020 Arbitration Agreement and January 16, 2021 Arbitration Agreement may be referred to separately, or collectively as the "StrongBlock Arbitration Agreement."

The Complaint does not identify when Plaintiffs allegedly signed up for NaaS, such that it is currently unclear which Dispute Resolution terms apply to which Plaintiff.[5] However, only about 0.5% of all NaaS subscriptions were created by StrongBlock users prior to January 16, 2021.

---

[5] StrongBlock does not collect any Personal Identifying Information that would allow StrongBlock to identify Plaintiffs at this time. *See* Moss Declaration, at ¶ 43.

9

*See* Moss Declaration, at ¶ 44.  It is most likely that all Plaintiffs assented to the updated TOS on StrongBlock's website after January 16, 2021 and bound themselves to the January 16, 2021 Arbitration Agreement, which expressly "supersedes and replaces any prior agreements or understandings between StrongBlock and you regarding the Site and Service." *Id.* at ¶ 41.

Nevertheless, the slight differences in the Arbitration Agreements do not prevent the Court from compelling arbitration at this juncture.  Plaintiffs' claims are covered by either the December 3, 2020 Arbitration Agreement or the January 16, 2021 Arbitration Agreement—and both Arbitration Agreements require the Court to compel arbitration.

## **LEGAL ARGUMENT**

The StrongBlock Terms of Service contain a valid binding arbitration provision and must be enforced pursuant to the FAA and relevant case law.  This Court should therefore enter an order compelling individual arbitration and dismissing this action, or, in the alternative, staying the case pending resolution of the parties' individual arbitration proceedings.

### A.    Legal Standards to Dismiss and Compel Arbitration

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the] . . . district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  It is well settled that "[a] court ruling on a petition to compel arbitration generally must decide two issues: (1) whether the parties agreed to arbitrate, and (2) if so, whether the scope of the agreement encompasses the claims at issue." *Cornelius v. Wells Fargo Bank, N.*A., No. 19-CV-11043 (LJL), 2020 WL 1809324, at *3 (S.D.N.Y. Apr. 8, 2020) (citing *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)).

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract," 9

U.S.C. § 2. "The [FAA] reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  The FAA and the strong federal policy favoring arbitration require courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.*, 473 U.S. at 625–26 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The United States Supreme Court reinforced that principle stating: "Congress has instructed that arbitration agreements . . .  must be enforced as written." *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1632 (2018).  Both the Second Circuit and this District observed that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." *Daly v. Citigroup Inc.*, No. 16-cv-9183 (RJS), 2018 WL 741414, at *6 (S.D.N.Y. Feb. 6, 2018) (quoting *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006)).

The FAA also contains the framework that federal courts must use to decide arbitrability. As stated by the Second Circuit: "In addition to manifesting a policy strongly favoring arbitration when contracted for by parties to a dispute, the FAA establishes a body of federal substantive law of arbitrability and also supplies a procedural framework applicable in federal courts." *Citigroup, Inc. v. Abu Dhabi Investment Authority,* 776 F.3d 126, 129-30 (2d Cir. 2015) (quotations and citations omitted).  This Court must follow the framework provided.

The FAA does not place a high burden upon the party moving to compel arbitration.  The movant need only make a *prima facie* showing that an agreement to arbitrate exists, and then the burden shifts to the party opposing arbitration to put the making of that agreement at issue. *See Begonja v. Vornado Realty Trust*, 159 F. Supp.3d 402, 409 (S.D.N.Y. 2016) (citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)).  "[A] party to an arbitration agreement

seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Latif v. Morgan Stanley & Co. LLC*, No. 18CV11528 (DLC), 2019 WL 2610985, at *2 (S.D.N.Y. June 26, 2019) (quoting *Harrington v. Atl. Sounding Co*., 602 F.3d 113, 124 (2d Cir. 2010)) (alteration in original).

### 1. StrongBlock and Plaintiffs Entered into a Valid and Enforceable Arbitration Agreement.

Plaintiffs and StrongBlock entered into a valid agreement containing an arbitration clause when Plaintiffs accepted the StrongBlock Terms of Service, as part of signing up for StrongBlock's NaaS. *See* Moss Declaration, at ¶¶ 35-36, 39. Courts must enforce a motion to compel arbitration "where the notice of the arbitration provision [is] reasonably conspicuous and manifestation of assent [is] unambiguous." *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 76 (2d Cir. 2017). Both the December 3, 2020 Arbitration Agreement and the January 16, 2021 Arbitration Agreement satisfy these standards.

First, StrongBlock provides "reasonably conspicuous notice" of the arbitration agreement. Potential users can have actual notice of the arbitration terms or inquiry notice to fulfill this prong. Even where a potential user does not have actual notice of the contractual terms, "the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms." *Meyer*, 868 F.3d at 74-75. Central to the inquiry notice analysis is the "clarity and conspicuousness of the arbitration terms," which "in the context of web-based contracts . . . are a function of the design and content of the relevant interface." *Id.* (internal quotation marks and citation omitted). Where terms are not displayed on the page courts look for "a clear prompt directing users to read [the terms]." *See Applebaum v. Lyft, Inc*., 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017) (citing *Sgouros v. TransUnion Corp*., 817 F.3d 1029, 1035 (7th Cir. 2016)). That

is, the hyperlinked terms must be conspicuous and placed in spatial and temporal proximity to the prompt or "notice language." *Meyer*, 868 F.3d at 74-75.

Plaintiffs' Complaint does not include any references to the StrongBlock Terms of Service or Plaintiffs' agreement to arbitrate their disputes. *See* Doc. 1.  Nevertheless, each Plaintiff alleges that they purchased nodes from StrongBlock and, as explained above, StrongBlock NaaS sign-up is not possible without a user affirmatively agreeing to the StrongBlock Terms of Service. *See* Complaint, at ¶¶ 15-29; Moss Declaration, at ¶¶ 25-26.  Plaintiffs who signed up for StrongBlock's NaaS before January 16, 2021 contractually agreed to binding arbitration for "[a]ny claim or controversy arising out of or relating to the App, this Agreement, or any other acts or omissions for which you may contend that [StrongBlock is] liable, including (but not limited to) any claim or controversy as to arbitrability". *See* Moss Declaration, at ¶ 36 (quoting the December 3, 2020 Arbitration Agreement).

Those who signed up for StrongBlock's NaaS any time after January 15, 2021, agreed that "ANY DISPUTE, CLAIM, OR CONTROVERSY BETWEEN YOU AND StrongBlock ARISING IN CONNECTION WITH OR RELATING IN ANY WAY TO THESE TERMS OR TO YOUR RELATIONSHIP WITH StrongBlock AS A USER OF THE SERVICE (WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, AND WHETHER THE CLAIMS ARISE DURING OR AFTER THE TERMINATION OF THE SERVICE) WILL BE DETERMINED BY MANDATORY BINDING INDIVIDUAL (NOT CLASS, REPRESENTATIVE, OR ACTION) ARBITRATION." *Id.* at ¶ 39. (quoting the January 16, 2021 Arbitration Agreement).  The updated Terms of Service also "supersede[d] and replace[d] any prior agreements or understandings

13

between StrongBlock and [Plaintiffs] regarding the Site and Service", namely, the December 3, 2020 Arbitration Agreement that called for arbitration in California.  *Id.* at ¶ 41.

Plaintiffs manifested their assent to the terms of StrongBlock Arbitration Agreement. Manifestation of assent may be demonstrated "by written or spoken word or by conduct."  6 *Meyer*, 868 F.3d at 74 (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)). Mutual manifestation of assent is measured "by an objective standard that takes into account both what the offeree said, wrote, or did and the transactional context in which the offeree verbalized or acted." *Id.* (citation omitted).  In online contracts, like written contracts, manifestation of assent can be accomplished by "words or silence, action or inaction," so long as the user "intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012) (quoting Restatement (Second) of Contracts § 19(2) (1981)).  Plaintiff manifested their assent to the StrongBlock Terms of Service, including StrongBlock Arbitration Agreement by affirmatively naming StrongBlock node(s), entering a description for the node(s), and most importantly, clicking the digital box next to the following statement, which included easily accessible hyperlinks to the Terms of Service:

> I agree to a monthly maintenance fee of ~$14.95. USD (calculated and payable as basis points of an ETH) at the time of signup, and every month thereafter.  I understand that failure to pay monthly fee within 30 days of due date will result in the smart contract automatically removing the node.  I also agree to the Node Applications Policy and the Terms of Service.

*See* Moss Declaration, at ¶ 23.  StrongBlock's NaaS sign-up flow satisfies the reasonably conspicuous notice and assent requirements.  The Second Circuit addressed a similarly structured flow in *Meyer*.  There, the Uber account sign-up flow at issue required the potential user to click a button marked "Register" underneath which there was notice language stating "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY."  *Meyer*, 868 F.3d

14

at 76.  The TOS and privacy policy were hyperlinked. *Id.* at 71.  The court found that the design of the screen containing the "Register" button and the notice language used constituted reasonable notice under California law. *Id.* at 78.  The court considered the following factors in making this determination: the uncluttered screen, containing only the necessary registration fields and the warning language; the visibility of the entire screen at one time; the hyperlinks to the terms of service and the privacy policy included in the warning language; the "bright white background" and the contrasting hyperlinks; the location of the hyperlinks "directly adjacent" to the button to manifest assent; and the temporal coupling of the notice and the assent. *See id.* In addition, the court considered the language "[b]y creating an Uber account, you agree" to be a prompt instructing a potential user to read the hyperlinked contractual terms before clicking the button. *Id.* at 78-79. The court found that by clicking the "Register" button, the potential user both created an account and manifested his unambiguous assent to the terms of service. *Id.* at 80.

The same factors the Second Circuit said constitute clear and conspicuous notice in *Meyer* are present in the StrongBlock node creation process.  Plaintiffs, at minimum, had inquiry notice of the TOS and manifested their assent by proceeding to sign up for StrongBlock's NaaS.  Plaintiffs were presented with a webpage that was uncluttered and contained only the fields to enter the name of the user's node, the description of the node, and to click the box to acknowledge the monthly maintenance fees and agree to the Terms of Service.  *See* Moss Declaration, at ¶¶ 25-28.  The StrongBlock NaaS sign-up page did not require Plaintiffs to scroll down the screen to see the notice language.  *Id.* at 26.  In fact, the notice language was spatially coupled, placed directly below the node name and description fields and contained the phrase "I also agree to the Node Applications Policy and the Terms of Service," prompting Plaintiffs to read the hyperlinked Node Applications Policy and the Terms of Service contractual provisions.  *Id.* at 28.

As in *Meyer,* the notice language was temporally coupled with the node creation fields—providing Plaintiffs with the opportunity to review the Terms of Service prior to creating their nodes. *Meyer*, 868 F.3d at 80.  Moreover, the hyperlinks were presented in contrasting typeface, denoting hyperlinks. *Id.* at 78.  When Plaintiffs clicked on the "Submit" button to sign up for StrongBlock's NaaS, they thus manifested their unambiguous assent to the Terms of Service and entered into the valid and enforceable arbitration agreement with StrongBlock contained therein.

This Court and numerous other courts have likewise found that sign-up flows similar to StrongBlock's node creation page provided reasonable notice of the contractual terms of service. *See, e.g., Feld v. Postmates, Inc*., 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) ("The hyperlinks to the TOS and Privacy Policy are in a darker, bolder font than the rest of the text, signifying to a reasonably prudent user that these would be clickable terms."); *Flores v. Chime Fin., Inc*., No. 21-CV-4735 (RA), 2022 WL 873252, at *5 (S.D.N.Y. Mar. 23, 2022) (The plaintiff "had reasonable notice of the arbitration provisions, as the agreements were highlighted in green and hyperlinked directly next to the check boxes, and both contained bolded, capitalized, and otherwise conspicuous text."); *Thorne v. Square, Inc.,* No. 20CV5119NGGTAM, 2022 WL 542383, at *3 (E.D.N.Y. Feb. 23, 2022), appeal withdrawn, No. 22-542, 2022 WL 2068771 (2d Cir. Apr. 14, 2022) (reasonable notice provided to plaintiff who tapped, "Next" when prompted 'By entering and tapping Next, you agree to the <u>Terms</u>, <u>E-Sign Consent</u> & <u>Privacy Policy</u>.'"); *Starke v. Gilt Groupe, Inc*., No. 13-CV-5497, 2014 WL 1652225, at *1 (S.D.N.Y. Apr. 24, 2014) (holding arbitration clause in "terms of use" binding where consumer clicked "Shop Now" button next to statement that informed user that "the consumer . . .  agrees to be bound by the 'Terms of Membership,'" which were available next to button as a hyperlink); *Fteja v. Facebook*, 841 F. Supp. 2d 829, 834, 841 (S.D.N.Y. 2012) (holding a forum selection clause binding where the user

clicked a "sign up" button which stated that clicking the button meant agreeing to their Terms of Service); *Crawford v. Beachbody, LLC*, No. 14CV1583-GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (holding a forum selection clause binding where consumer clicked on button marked "Place Order" and above button was statement informing user that by clicking the button, user was subject to website's "terms and conditions," which were available on the same screen via hyperlink); *Swift v. Zynga Game Network, Inc*., 805 F. Supp. 2d 904, 908, 912 (N.D. Cal. 2011) (holding an arbitration clause enforceable where user clicked on a button marked "accept," below which was statement in small gray font indicating that clicking on button meant accepting hyperlinked "terms of service").

Accordingly, Plaintiffs had at minimum inquiry notice of the contractual terms and manifested their agreement by clicking the box to sign up for StrongBlock's NaaS.  Plaintiffs and StrongBlock are bound by the terms of that agreement.

> **2.      Plaintiffs' Claims Against StrongBlock are Within the Scope of the Arbitration Agreement**

The claims Plaintiffs seek to bring are also within the scope of the StrongBlock Arbitration Agreement.  Arbitration agreements are fundamentally a matter of contract.  *See Applebaum v. Lyft, Inc*., 263 F. Supp. 3d at 463-64 ("Arbitration clauses are a matter of contract law and, if valid, should be enforced.") (quoting *DuBois v. Macy's East Inc*., 338 Fed. Appx. 32, 33 (2d Cir. 2009) (summary order)); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) ("[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). The Supreme Court has distinguished between broadly written arbitration clauses that designate all disputes to arbitration and those that purport to make only a narrow set of issues

arbitrable, finding that "the strong federal presumption in favor of arbitrability applies with greater force when an arbitration clause is a broad one." *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (citing *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986)).

The StrongBlock Arbitration Agreement Plaintiffs agreed to is a broad one and covers their claims here. StrongBlock's December 3, 2020 Arbitration Agreement covers "Any claim or controversy arising out of or relating to the App, this Agreement, or any other acts or omissions for which you may contend that we are liable, including (but not limited to) any claim or controversy as to arbitrability." *See* Moss Declaration, at ¶ 36. StrongBlock's January 16, 2021 Arbitration Agreement covers "ANY DISPUTE, CLAIM, OR CONTROVERSY BETWEEN YOU AND StrongBlock ARISING IN CONNECTION WITH OR RELATING IN ANY WAY TO THESE TERMS OR TO YOUR RELATIONSHIP WITH StrongBlock AS A USER OF THE SERVICE (WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, AND WHETHER THE CLAIMS ARISE DURING OR AFTER THE TERMINATION OF THE SERVICE)." *Id.* at ¶ 39.

Significantly, in both StrongBlock Arbitration Agreements, the parties also delegated all issues, including the issue of arbitrability, to the arbitrator. There can be no dispute as to the breadth of the arbitration agreement entered into by Plaintiffs and StrongBlock. Courts regularly enforce similar arbitration agreements. *See, e.g., Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649, 654 (2d Cir. 2004) ("any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement"); *Vera v. Saks & Co*, 335 F.3d 109, 117 (2d Cir. 2003).

Plaintiffs allege that Defendants violated the United States' Securities Act by offering unregistered securities. *See* Doc. 1, at pp. 31-33. Plaintiffs also claim that by capping the rewards on the StrongBlock nodes, Defendants breached their contract, and committed conversion, misrepresentation, fraudulent inducement, were negligent and unjustly enriched. *Id.* at pp. 34-41. All of these claims relate to StrongBlock nodes, token rewards issued by StrongBlock, and Plaintiffs' relationship with StrongBlock and thus fall squarely within the types of disputes covered by the StrongBlock Arbitration Agreement. And it is well settled that "[i]f the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated." *Paramedics Electromedicina Comercial*, 369 F.3d at 654 (citation omitted). Given the broad scope of the arbitration agreement covering "[a]ny claim or controversy arising out of or relating to the App, this Agreement, or any other acts or omissions for which you may contend that we are liable," or "ANY DISPUTE, CLAIM, OR CONTROVERSY BETWEEN YOU AND StrongBlock ARISING IN CONNECTION WITH OR RELATING IN ANY WAY TO THESE TERMS OR TO YOUR RELATIONSHIP WITH StrongBlock," it is clear that Plaintiffs' claims are covered by the arbitration agreement at issue. Plaintiffs and StrongBlock must be bound by the terms of their arbitration agreement.

### 3. Plaintiffs' Claims Against the Individual Defendants are Within the Scope of the Arbitration Agreement

As shown above, Plaintiffs and StrongBlock agreed to arbitrate any of the parties' disputes. This agreement requires that Plaintiffs' disputes with individual Defendants David Moss, Brian Abramson, Corey Lederer, and Konstantin Shkut (hereafter, collectively the "Individual Defendants") also be arbitrated. Plaintiffs allege in their Complaint that Individual Defendants are "partners in Strongblock," which Plaintiffs claim is "an unincorporated general partnership operating within the United States." Doc. 1, at ¶ 30. Plaintiffs allege that (a) Defendant Moss is

the "CEO and Founder of Strongblock"; (b) Defendant Abramson is the "Chief Technical Officer of Strongblock"; (c) Defendant Lederer is the "Chief Product Officer of Strongblock"; and (d) Defendant Shkut is the "Lead Developer of Strongblock". *Id.* at ¶¶ 31-34.

As a preliminary matter, we should clarify again that "StrongBlock" is not an "unincorporated general partnership operating within the United States"; StrongBlock is a registered USPTO tradename of Jenison Holdings SEZC, a Special Economic Zone Company in the Cayman Islands.  *See* Moss Declaration, at ¶ 4; *see also* Exhibit A-2 (StrongBlock Terms of Service).  The Individual Defendants are employed by a limited liability company that contracts with Jenison Holdings SEZC for its employees, including the Individual Defendants, to perform certain duties on behalf of StrongBlock.  *Id.* at ¶ 3.

Nevertheless, while the Individual Defendants did not sign the StrongBlock Arbitration Agreement that Plaintiffs signed, a "non-signatory" to an arbitration agreement can compel a signatory (such as Plaintiffs) to arbitrate their claims when, (1) "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the [arbitration] agreement"; and (2) the "relationship among the parties . . .  justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the [non-signatory].'"  *See Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17-CV-5846 (VSB), 2020 WL 496078, at *2 (S.D.N.Y. Jan. 30, 2020) (citation omitted).

The first factor—the need to resolve intertwined issues—is easily satisfied.  Indeed, Count II of Plaintiffs' Complaint alleges Control Person Liability for Violations of Section 5 and 12(a)(1) of the Securities Act, which Plaintiffs claim StrongBlock violated in Count I of their Complaint. The remaining seven claims in the Complaint are asserted by Plaintiffs against all Defendants,

with allegations made against StrongBlock and the Individual Defendants without any differentiation.

The second factor—the relationship of the parties—is also met.  Compelling arbitration is appropriate when there exists "a relationship among the parties which either support[s] the conclusion that [the signatory] had consented to extend its agreement to arbitrate to [the non-signatory], or, otherwise put, [makes] it inequitable for [the signatory] to refuse to arbitrate on the ground that it had made no agreement with [the non-signatory]." *Id.* (quotation omitted).  Because Plaintiffs have alleged that Individual Defendants are "partners" in StrongBlock, and Plaintiffs agreed to arbitrate their disputes with StrongBlock, it would be inequitable for Plaintiffs to refuse to arbitrate their disputes with the Individual Defendants.

### 4. Defendants Seek a Dismissal of Plaintiffs' Action and, in the Alternative, Request a Stay Pending Arbitration.

The "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).   However, when, as here, Defendants request that an action be dismissed and request a stay in the alternative, the Court "has discretion in determining whether to stay or dismiss the case pending arbitration." *See Rost v. Liberty Coca-Cola Beverages, LLC*, No. 20 CV 10559 (VB), 2021 WL 3723092, at *5 (S.D.N.Y. Aug. 23, 2021). We respectfully ask the Court to exercise its discretion to dismiss Plaintiffs' Complaint.

### <u>CONCLUSION</u>

Plaintiffs individually entered into a valid and binding arbitration agreement with StrongBlock, under which any claims they might have must be brought in an arbitration as individuals.  The claims Plaintiffs seek to bring here fall squarely within the scope of that

agreement.   Accordingly, the Court should grant Defendants' motion to compel individual arbitration and dismiss this action.